1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| FLORENTINO TIQUI, et al., | Case No. 09cv1750 BTM (BLM) |
| Plaintiff, | **ORDER GRANTING IN PART AND** |
| v. | **DENYING IN PART MOTION TO** |
| First National Bank of AZ, et al., | **DISMISS** |
| Defendant. | |

16

Defendant PennyMac Loan Services has filed a Motion to Dismiss the Complaint [Doc. 4].  For the following reasons, the Court **GRANTS in part** and **DENIES in part** the Motion.


# I.  BACKGROUND[1]

In August 2007, Plaintiffs Florentino and Aida Tiqui received a $451,250 mortgage loan from First National Bank of Arizona ("First National").  Plaintiffs used their real property located at 10172 Drumcliff Avenue, San Diego, CA 92126 (the "Property") to secure the loan. First National later assigned their beneficial interest in the loan to Defendant PennyMac Loan Servicing, LLC.

---

[1]  The following are merely allegations in the Complaint, not the Court's factual findings.

1   Defendants Premier Mortgage Funding, acting as broker, and First National
2   represented that Plaintiffs could receive "very favorable loans," but Plaintiffs ultimately
3   received "a worse loan."  (Compl. ¶ 15.)  Plaintiffs were unable to make their monthly
4   payments and defaulted.  As a result, a notice of default and notice of trustee's sale were
5   recorded against the Property in April and July of 2009, respectively.[2]  The Complaint does
6   not allege that the Property has been foreclosed.

7   Plaintiffs allege a laundry list of claims, including (1) a violation of the Real Estate
8   Settlement Procedures Act ("RESPA"), (2) a violation to the Truth-In-Lending Act ("TILA"),
9   (3) a violation of California Civil Code § 1632 for failure to provide a Spanish-language
10  contract, (4) unfair competition under California Business and Professions Code § 17200,
11  (5) negligent misrepresentation, (6) fraud, (7) rescission, (8) quasi contract, and (9)
12  determination of validity of lien.

13
14                                    **II.  LEGAL STANDARD**

15  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth
16  a "short and plain statement of the claim showing that the pleader is entitled to relief," and
17  "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."
18  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When reviewing a motion to
19  dismiss, the allegations of material fact in plaintiff's complaint are taken as true and
20  construed in the light most favorable to the plaintiff.  *See Parks Sch. of Bus., Inc. v.*
21  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  But only factual allegations must be
22  accepted as true—not legal conclusions.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).
23  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
24  statements, do not suffice."  *Id.*  Although detailed factual allegations are not required, the

25  ───────────────

26      [2] The Court takes judicial notice of the documents in PennyMac's Request for Judicial
27  Notice, including the deed of trust, assignment of the deed, notice of default, notice of
    trustee's sale, truth-in-lending disclosure, good-faith estimate, HUD-1 settlement statement,
28  and notice of right to cancel.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)
    (Court may take judicial notice of matters of public record that are not subject to reasonable
    dispute.).  Plaintiffs refer to many of these documents .

                                            2                              09cv1750 BTM (BLM)

factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 129 S. Ct. at 1949.

## III.  DISCUSSION

**A.      First Cause of Action – Violation of RESPA**

Plaintiffs first allege that Defendants violated RESPA by failing to respond to a Qualified Written Request ("QWR").  The provision of RESPA at issue provides:

(e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

. . .

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

3

1
2

> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

3
4

> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

5  12 U.S.C. § 2605(e).

6        Plaintiff claims that Defendants violated § 2605(e) by failing to respond with the
7  requested documents and information.  In response, PennyMac argues that Plaintiffs' claim
8  fails because there is no private right of action for failure to respond to a QWR.  PennyMac
9  is incorrect.  Section 2605(f) states that "[w]hoever fails to comply with any provision of this
10  section shall be liable to the borrower for each such failure" for certain amounts.  12 U.S.C.
11  § 2605(f).

12        Next, PennyMac argues that Plaintiffs do not adequately allege that they made a
13  QWR.  The Court disagrees.  Plaintiffs allege that each of the Defendants received QWRs
14  regarding the loan and failed to adequately respond.  (Compl. ¶ 20.)  Although Plaintiffs do
15  not allege when they sent the QWRs or state the contents of the QWRs, the Court must
16  make all reasonable inferences in favor of the Plaintiff on a motion to dismiss.  Plaintiffs'
17  allegations are sufficient to state a claim for failure to respond to a QWR.[3]  The Court
18  therefore declines to dismiss Plaintiffs' RESPA claims regarding the QWRs.

19        Plaintiffs allege four other violations of RESPA.  First, Plaintiffs allege the interest rate
20  in the Good-Faith Estimate ("GFE") was inconsistent with the rate on the Settlement
21  Statement in violation of 12 U.S.C. § 2604(c).  The GFE is an "estimate of the amount or
22  range of charges for specific settlement services the borrower is likely to incur in connection"
23  with getting a mortgage. 12 U.S.C. § 2604(c).  The Settlement Statement, on the other hand,
24  comes after the GFE and lists the *actual* settlement costs for the mortgage.  *Id.* at § 2603(a).
25  The Settlement Statement is not required to show the interest rate on the loan.  *See id.*

26  _____

27      [3] The Court also notes that Plaintiffs attached the purported QWRs to their opposition to Defendant's Motion, and they appear to comply with § 2605 by requesting information
28  related to servicing, including the amounts due, payments history, and the current interest rate. 12 U.S.C. § 2605e(1)(A).  The QWRs appear to have been forwarded to PennyMac. (Tiqui Decl., Ex. G.)

Here, Plaintiffs allege that there is an inconsistency between the interest rate listed on the GFE and the one listed in the Settlement Statement.  But the Settlement Statement only contains charges and fees, not the interest rate.  *Id.*  Furthermore, the GFE states a proposed interest rate of 7.875%. (PennyMac's Request for Judicial Notice ("RJN"), Ex. F.) And the initial interest rate was the same: 7.875%.  (RJN, Ex. A, Adjustable Rate Rider.) Accordingly, Plaintiffs have failed to state a violation of § 2604(c).

Second, Plaintiffs allege that the Truth in Lending Act ("TILA") disclosure "is ambiguous about whether monthly payments include sums due for Mortgage Insurance." (Compl. ¶ 41.)  Plaintiffs do not cite to, and the Court is likewise unable to locate, any law requiring that the TILA disclosures state whether monthly payments include mortgage insurance.  Accordingly, these allegations fail to state a claim.

Third, Plaintiffs allege there are conflicting terms regarding whether the loan has an adjustable rate or a fixed rate.  Contrary to Plaintiffs claim, both the Deed and the TILA disclosures state the loan has an adjustable rate. (RJN, Exs. A, E.)  Accordingly, this claim must also be dismissed.

And fourth, Plaintiffs allege that Defendants assessed improper broker fees, presumably in violation of 12 U.S.C. § 2607.  But a claim under § 2607 must be brought within one year of the violation.  12 U.S.C. § 2614.  Plaintiffs executed the loan in 2007 and brought this suit in 2009, well over the one-year limit.  Thus, Plaintiffs have not stated a claim under § 2607.

Although only PennyMac moved for dismissal, Plaintiffs fail to state RESPA claims, with the exception of the QWR claim, against any Defendant.  Plaintiff has had an opportunity to respond to PennyMac's arguments, and therefore most of Plaintiffs' RESPA claims are dismissed as to all Defendants.  *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981) (court may *sua sponte* dismiss for failure to state claim if plaintiff has had opportunity to respond to arguments).  Plaintiff's QWR claim is the only surviving RESPA claim.

**B.     Second Cause of Action – TILA Violations**

5

Plaintiffs allege that Defendants violated TILA by (1) failing to provide a proper notice of the right to cancel; (2) deceptively presenting the loan's interest rate; (3) incorrectly calculating the annual percentage rate; and (4) failing to disclose the payments to the lender and broker.

PennyMac first argues that Plaintiffs cannot recover statutory damages under TILA because their action is untimely.  Plaintiffs counter that their claims are equitably tolled.  An action for damages under TILA has a one-year statute of limitations.  *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1007 n.3 (9th Cir. 2008) (citing 15 U.S.C. § 1640(e)).  But the statute of limitations for TILA violations may be equitably tolled if plaintiffs would not have reason to know that a particular disclosure was missing or inaccurate.  *Yang v. Home Loan Funding, Inc.*, No. 07cv1454, 2010 WL 670958, at *6 (E.D. Cal. Feb. 22, 2010) (citing *King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986)).

Here, the alleged violations happened during the closing of the loan in 2007.  So Plaintiffs' TILA claims are time barred unless they may be equitably tolled.  Plaintiffs are allegedly Filipino and are native Tagalog speakers, the negotiations were conducted in Spanish, and the TILA disclosures were in English.  Nevertheless, Plaintiffs have not alleged why they could not have discovered any alleged deficiencies sooner, nor do they allege when Plaintiffs actually discovered them.  Moreover, Plaintiffs retained their attorneys by March 2008 at the latest, (Tiqui Decl., Ex. A), and Plaintiffs have not explained why they delayed in asserting these claims.  Under these circumstances, the Court finds that Plaintiffs have failed to show they are entitled to equitable tolling.  *Hensley v. United States*, 531 F.3d 1052, 1058 (9th Cir. 2008) ("The doctrine [of equitable tolling] . . . does not apply when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights.") (internal quotation marks omitted) (citing *Scholar v. Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992)).

In addition to their damages claim, Plaintiffs also seek to rescind the loan transaction because (1) the interest rate on the note and the TILA disclosures were inconsistent and (2)

1    failed to provide proper notice of the right to cancel the transaction.[4]  First, regarding the

2    purported interest rate inconsistency, TILA disclosures are not required to include the interest

3    rate.  *See* 15 U.S.C. § 1638(a).  Moreover, all the interest rates disclosed in the GFE and the

4    Deed are consistent.  (*Compare* RJN, Ex. F *with* RJN, Ex. A.)  Accordingly, the Court

5    dismisses this claim.

6         Second, regarding the notice of the right to cancel, Plaintiffs appear to have signed

7    just such a notice.  (RJN, Ex. H.)  Under 15 U.S.C. § 1635(a), creditor must disclose to the

8    borrower that the borrower may rescind the transaction within three days of executing the

9    loan and include rescission forms in the notice.  The Notice of Right to Cancel, signed by

10   both Plaintiffs, discloses Plaintiffs' right to cancel within three days, provides instructions on

11   how to do so, and a form with which to do it.  The notice is plainly not deficient, and Plaintiffs'

12   right to rescission does not extend beyond the initial three-day period.  The Court therefore

13   dismisses the claim for rescission under TILA.

14        There is another reason to deny rescission.  In a rescission action, the party seeking

15   rescission must restore, or offer to restore, to the non-rescinding party all consideration

16   received under the contract.  *See* Cal. Civ. Code § 1691(b); *see also Yamamoto v. Bank of*

17   *New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) (Courts have the power to confirm that a

18   borrower "could repay the loan proceeds before going through the empty (and expensive)

19   exercise of a trial on the merits.").  Plaintiffs, however, have not done so.  Nor have they

20   demonstrated that they are capable of doing so.  *Karlsen v. Amer. Sav. & Loan Ass'n*, 15

21   Cal. App. 3d 112, 118 (1971) ("Simply put, if the offeror 'is without the money necessary to

22   make the offer good and knows it . . .' the tender is without legal force or effect").

23        For the foregoing reasons, Plaintiffs' Second Cause of Action is dismissed in its

24   entirety as against all Defendants.  If Plaintiffs seek rescission in their Amended Complaint,

25   _____

26        [4] Plaintiffs also allege other bases for rescission, including incorrectly calculating the
     annual percentage rate ("APR") and payments to the lender and broker, but they are not
27   "[r]equired disclosures" under 15 U.S.C. § 1638(a). Moreover, the TILA disclosure states and
     explains the annual percentage rate as required by § 1638(a)(4), (a)(8), and Plaintiffs have
28   failed to explain why they believe the APR is incorrectly calculated.  Lastly, the Settlement
     Statement clearly lists payments made to the lender and broker.  (RJN, Ex. G.)

they must demonstrate their ability to restore all consideration, less fees and interest, they received from the loan transaction.

**C.      Third Cause of Action – Violation of California Civil Code § 1632**

Plaintiffs claim they did not receive translated loan documents in violation of California Civil Code § 1632.  Section 1632 requires that when parties negotiate in a foreign language, the party drafting the contract must give a contract translated into that language.  *See* Cal. Civ. Code § 1632(b).  But that provision only applies to loans secured by real property when the proceeds are "use[d] primarily for personal, family or household purposes."  *Id.* at § 1632(b)(4).  Moreover, the only remedy under this section is rescission.  *Id.* at § 1632(k).

Here, Plaintiffs allege they speak Tagalog, they negotiated the transaction in Spanish, and they were not provided translated loan documents.[5]  Nevertheless, Plaintiffs have not alleged that they used the loan proceeds for "primarily . . . personal, family or household purposes."  *Id.* at § 1632(b)(4).  But more importantly, as discussed above Plaintiffs have not established they are able to restore the loan proceeds to the creditors, which is required for rescission.  *See Yamamoto*, 329 F.3d at 1173.  Therefore, the Court dismisses Plaintiffs' Third Cause of Action as against all Defendants.

**D.      Fifth Cause of Action – Negligent Misrepresentation**

The elements of a negligent misrepresentation claim are "(1) a misrepresentation of a past or existing material facts, (2) without reasonable ground for believing it to be true, (3) with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  *Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc.*, 171 Cal. App. 4th 35, 50 (2009).  "It is well established in the

//

//

---

[5]   Plaintiffs allege they are native Tagalog speakers, but that they negotiated in Spanish.  Whether this is a typo or not is immaterial to the Court's analysis.

8

09cv1750 BTM (BLM)

1   Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule

2   9(b)'s particularity requirement." *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101,

3   1141 (C.D. Cal. 2003); *see also Lorenz v. Sauer*, 807 F.2d 1509, 1511–12 (9th Cir. 1987)

4   ("Under California law, negligent misrepresentation is a species of actual fraud . . . ."). Rule

5   9(b) requires that "in alleging fraud or mistake, a party must state with particularity the

6   circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs may not lump

7   multiple defendants together; they must "differentiate their allegations when suing more than

8   one defendant . . . and inform each defendant separately of the allegations surrounding his

9   alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir.

10  2007). At a minimum, the plaintiffs must "identify the role of each defendant in the alleged

11  fraudulent scheme." *Id.* at 765.

12      With respect to Defendants First National and Premier Mortgage Funding, Plaintiffs

13  merely allege that they "made material misrepresentations to Plaintiffs which include, but are

14  not limited to, those listed above." (Compl. ¶ 60.) Plaintiffs do not indicate the allegations

15  "listed above" to which it refers. This utter lack of specificity fails to meet the requirements

16  of Rule 9(b).

17      With respect to PennyMac, Plaintiffs first allege that PennyMac "aided, abetted and

18  was in a contractual relationship with First National and other investors," which purportedly

19  makes PennyMac liable for First National's negligent misrepresentations. But because

20  Plaintiffs' allegations against First National lack specificity, by extension so do the allegations

21  against PennyMac.

22      Plaintiffs also allege that PennyMac negligently misrepresented that it had authority

23  to foreclose on the loan. (Compl. ¶¶ 62–68.) But Plaintiffs have not pled a misrepresentation

24  of fact upon which there was reliance or damage. *Nat'l Union Fire Ins. Co.*, 171 Cal. App.

25  4th at 50. Additionally, the loan documents, which the Court has judicially noticed, show that

26  PennyMac has the authority to foreclose the loan upon Plaintiffs' default. (*See* RJN, Exs.

27  A–D.) Plaintiffs admit that PennyMac has been assigned the deed, (*e.g.,* Compl. ¶ 62), and

28  they do not deny that they defaulted under the loan. Thus, despite Plaintiffs' conclusory

1 statement that "PennyMac falsely and negligently represented to Plaintiffs that it had the

2 authority to foreclose on the LOAN," (Compl. ¶ 63), Plaintiffs have not alleged *facts* showing

3 that PennyMac's representation was false.  Thus, the Court dismisses Plaintiffs' Fifth Cause

4 of Action as against all Defendants.  *See Iqbal*, 129 S. Ct. at 1949 (only factual allegations,

5 not legal conclusions, taken as true).

6

7

8 **E.      Sixth Cause of Action – Fraud**

9          As mentioned above, Plaintiffs must plead fraud with particularity.  Fed. R. Civ. P.

10 9(b).  Plaintiffs' allegations again lack specificity.  Although Plaintiffs allege that "Defendants

11 made various misrepresentations of material fact with respect to the LOAN," (Compl. ¶ 71),

12 Plaintiffs do not allege which Defendants made the misrepresentations, when they made

13 them, and to whom.  Furthermore, any alleged misrepresentations regarding the loan's terms

14 made before Plaintiffs executed the loan are not actionable.  *See Brookwood v. Bank of

15 America*, 45 Cal. App. 4th 1667, 1674 (1996) ("Reliance on an alleged misrepresentation .

16 . . is not reasonable when plaintiff could have ascertained the truth through the exercise of

17 reasonable diligence.  Reasonable diligence requires the reading of a contract before signing

18 it.")

19          Plaintiffs also allege a cause of action for fraud against PennyMac for starting

20 foreclosure proceedings.  But as discussed above, Plaintiffs have not alleged facts showing

21 that PennyMac made a false representation about its ability to foreclose on the loan.  To the

22 contrary, the loan documents establish PennyMac's right to do so.  (*See* RJN, Exs. A–D.)

23 For these reasons, Plaintiffs' Sixth Cause of Action must be dismissed as against all

24 Defendants.

25

26 **F.      Seventh Cause of Action – Rescission**

27          "Rescission is *not* a cause of action; it is a remedy."  *Nakash v. Superior Court*, 196

28 Cal. App. 3d 59, 70 (1987).  And as the Court explained above, Plaintiffs may not seek

1  rescission until they have shown they are able to tender the consideration they received

2  under the loan transaction.  *Yamamoto*, 329 F.3d at 1173.  Thus, the Court dismisses

3  Plaintiffs' Seventh Cause of Action as against all Defendants.

4

5  **G.    Eighth Cause of Action – Quasi Contract**

6         Plaintiffs allege that "Defendants received benefits from Plaintiffs in the form of

7  commissions, rebates, portions of payment streams, fees, charges or other compensation

8  deriving from the original defective loan documents." (Compl. ¶ 106.)  Plaintiffs' claim is

9  essentially one for unjust enrichment.  *See Supervalu, Inc. v. Wexford Underwriting*

10 *Managers, Inc.*, 175 Cal. App. 4th 64, 78 (2009) ("If an entity obtains a benefit that it is not

11 entitled to retain, the entity is unjustly enriched. The aggrieved party is entitled to restitution,

12 which is synonymous with quasi-contractual recovery.")  A claim for unjust enrichment

13 requires pleading "the receipt of a benefit and the unjust retention of the benefit at the

14 expense of another."  *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000).

15        Here, Plaintiffs have not alleged sufficient wrongful conduct by Defendants to state

16 a claim for unjust enrichment.  The Court has dismissed every cause of action except the

17 RESPA claim related to the QWRs, and the QWRs have no relevance to the unjust

18 enrichment claim.  Accordingly, the Court dismisses Plaintiffs' Eighth Cause of Action as

19 against all Defendants.

20

21 **H.    Ninth Cause of Action – Determination of Validity of Lien**

22        As set forth above, Plaintiffs have failed to allege any defects in the lien or the related

23 loan documents.  Plaintiffs' request that the Court declare the lien invalid *ab initio* therefore

24 cannot be granted.  Given that the Court has dismissed Plaintiffs' other claims related to the

25 loan transaction, the Court also dismisses Plaintiffs' Ninth Cause of Action as against all

26 Defendants.

27 //

28 //

11

**I.     Fourth Cause of Action – Unfair Competition Under California Business & Professions Code § 17200**

The Court addresses Plaintiffs' fourth cause of action last because it is predicated on other violations of law.  Section 17200 of the California Business and Professions Code "'borrows' violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  "Violation of almost any federal, state, or local law may serve as the basis for a[n] [unfair competition] claim." *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) (citing *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994)).  Furthermore, a "defendant's alleged RESPA violation can serve as a foundation for plaintiff's Bus. & Prof. Code § 17200 claim for relief." *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1122–23 (E.D. Cal. 2009) (citing *Farmers*, 2 Cal. 4th at 383; *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034 (C.D. Cal. 2008)).

Here, the Court has found that Plaintiffs have successfully stated a claim under RESPA for Defendants' failure to respond to QWRs.  Accordingly, the Court dismisses the Fourth Cause of Action in all respects except as it relates to Defendants' failure to respond to the QWR.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** PennyMac's Motion to Dismiss [Doc. 4].  The Court **DISMISSES without prejudice** all of Plaintiffs' Complaint except for the following: (1) Plaintiffs' RESPA claim for failure to respond to the QWRs; and (2) Plaintiffs' claim for violation of § 17200 only insofar as the violation is based on the failure to respond to the QWRs.

If Plaintiffs want to file an Amended Complaint they must do so within fourteen days of the entry of this order.  The Amended Complaint must address the deficiencies identified by the Court, and shall not include causes of action that the Court has dismissed unless they have been corrected in accordance with this order.  If Plaintiffs again seek rescission, they

must demonstrate their ability to restore the consideration they received under the loan documents, less commissions and fees.

If Plaintiffs file an Amended Complaint, the Court encourages Defendants to consider specifically tailored motions for summary judgment as opposed to motions to dismiss.  Since the Court is well acquainted with this matter, any motions to dismiss and oppositions thereto shall be limited to ten pages and no reply briefs shall be permitted.

**IT IS SO ORDERED.**

DATED:  April 5, 2010

Honorable Barry Ted Moskowitz
United States District Judge

09cv1750 BTM (BLM)